(No. 20284.—
ELIZA DICKEY, Appellant, *vs.* JOSEPH DICKEY *et al.* Appellees.

*Opinion filed October 25, 1930.*

WILLIAM H. SCHUWERK, and WALTER J. SCHUWERK, for appellant.

J. Fred Gilster, and William G. Juergens, for appellees.

Mr. Chief Justice Dunn delivered the opinion of the court:

The circuit court of Randolph county dismissed the bill of the appellant, Eliza Dickey, and she has appealed.

The bill alleged that on April 11, 1921, the complainant bought a lot of ground 120 feet square in block 1 of William R. Leiper's First addition to Coulterville for $375, of which she paid Leiper $250, with the agreement that he was to execute a warranty deed and deposit it in the First National Bank of Coulterville, to be held until the complainant paid the remainder of the purchase money, $125. She paid this amount on July 5, 1921, and the deed was then delivered to her son, Joseph Dickey, and on July 6 was filed for record with the recorder of deeds of Randolph county; that some person other than the complainant filed the deed for record and she believes that was her son, Joseph; that instead of being made to Eliza Dickey in fee simple the deed was made to "Eliza Dickey, and to revert at her death to her son, Joseph Dickey." The complainant did not know how the deed happened to be made in that way, but alleges that it happened either through the mistake of the person who made the deed or through the fraudulent alteration of the deed by some person unknown to her after its execution, but in either event the deed did not comply with the agreement between her and Leiper. She paid the whole of the purchase price of the real estate and bought and paid for all materials used in the erection of a dwelling thereon. The deed was deposited with the Coulterville Building and Loan Association by her son immediately after it was recorded, and she never afterwards saw the deed and did not know its contents until April 1, 1929, when she learned that it did not convey to her the fee simple title to the real estate. On September 22, 1921, she com-

pleted the erection of a building on the real estate, and needing money to pay the labor bill she borrowed from the Coulterville Building and Loan Association $1000 and paid the labor bill and other bills incurred in the erection of the building, and at that time executed a mortgage to the building and loan association to secure the loan. Her son, Joseph Dickey, also signed the mortgage, but that fact was unknown to her until after she secured an examination of the record of the mortgage from the recorder's office on April 1, 1929. She also secured a further loan of $200 on July 6, 1926, from the building and loan association and executed a mortgage on the premises to the association. Both of the mortgages are good and valid liens upon the property for the amounts remaining due. The complainant has always paid all dues, interest and premiums on the loans and still continues to do so, and has paid the sum of $900 in dues, premiums and interest on the loans. Joseph Dickey and the Coulterville Building and Loan Association are made defendants to the bill, and the prayer is that the complainant be decreed to be the owner in fee simple of the real estate, subject to the mortgages, and that the deed of Leiper and wife be reformed so as to show the complainant to be the owner in fee simple of the real estate, and that the defendant Joseph Dickey be decreed to convey to the complainant whatever right he may have acquired by reason of the deed from Leiper.

Joseph Dickey answered the bill, admitting Leiper's ownership of the lot but denying that the complainant purchased it on April 11, 1921, or that it was then agreed that she should receive a warranty deed for the premises conveying to her the fee simple title. The answer also denied that the deed was made to "Eliza Dickey, and to revert at her death to her son, Joseph Dickey," through the mistake of the person who wrote the deed or through the fraudulent alteration of the deed. It denied that the deed as written does not comply with the agreement between the complain-

ant and Leiper for the purchase of the real estate, and denied that the complainant paid any labor bills for the erection of a dwelling on the real estate.

The hearing occurred in January, 1930. Mrs. Dickey testified that she would be eighty-five years of age her next birthday and that she received a pension of $40 a month, which she had received since her husband's death. She and her husband owned a small piece of property in Coulterville, which was sold shortly after her husband's death and before she bought the lot in controversy. She sold the other property for about $700 and bought this lot from Leiper. She made the contract herself for $375, made the first payment by check, and about a month later she paid the last payment through the bank by check, which her son took to the bank. She never saw the deed and first learned that the deed was made as it is from McMurdo, her attorney. She borrowed $1000 from the building and loan association and thought she signed the papers in the office of the association, and that Joseph Dickey was not there, for she did not see him. She did not know that Joseph signed the mortgage to the loan association and did not know, when she testified, that he signed it. When she built the house she used the money she got from the building and loan association and also the money she had left from the sale of the other house, and she had paid the building and loan association ever since out of her pension money. When the deed was made her son was living with her and they were on friendly terms. He was a widower and he and his boy lived with her. He built the house for her that is in dispute but did not get any pay for building it. He is a carpenter. He built two houses for her—the one she sold and the one where she now lives. She paid for the material in both houses. She went to Leiper's one evening and told him she wanted to buy a lot because the house she owned was too close to the railroad track, and a few evenings later went back and told him she wanted to buy the lot in ques-

tion but did not tell him how to make the deed. She did not go along to the building and loan association when the deed was made and did not know who told Hightower, the secretary of the building and loan association, how to make the deed; that she was not there. Her son lived in the house with her after it was built, except the time he was at Murphysboro and the time he went to Florida. He never paid any rent. When he came back from Florida with his wife the trouble started. Before that they were on friendly terms and she still loved him. She was at the time of the hearing living with her daughter, and her daughter and Joseph's wife did not get along.

William R. Leiper testified that when the agreement was made with reference to the sale of the property Mrs. Dickey saw him at his home and asked him if he would sell some property. He told her he would and what he would take for it. The deal was not closed on that day. He had a memorandum book in which he recorded sales of all lots he made, and this sale was made on April 9, 1921, the first payment of $250 being then paid. The last payment ($125) was made on July 5. The deed to Mrs. Dickey was deposited in the First National Bank of Coulterville, to be held until the money was paid and then delivered to Mrs. Dickey. Leiper did not remember that any directions were given to him by Mrs. Dickey as to how the deed should be made or that she mentioned the name of Joseph Dickey. On cross-examination he said that he went to Hightower and told him how to make the deed. Neither Mrs. Dickey nor Joseph was there. No one was there but Professor Hightower and himself. Mrs. Dickey came to his house and told him she would buy the lot and told him how to have the deed made. The attorney for Joseph Dickey admitted that the deed, after being recorded, was returned to Joseph on July 9, 1921. Leiper was again called as a witness for the defendant and testified that he had the deed made in accordance with Mrs. Dickey's instructions. He could not

say whether or not it was made the way she told him to. After the deed was signed he put it in the bank. Joseph Dickey was not there and he did not give it to him but took it to the bank and gave them instructions to deliver it to Mrs. Dickey when she paid for it.

C. F. Hightower testified that he was secretary of the building and loan association and that he did not recall the circumstances of making the deed for Leiper to Mrs. Dickey and her son, Joseph, but it looked as if it was made on his typewriter and the metes and bounds of the description looked as if it was probably his. The handwriting on the bottom, "Return to Joseph Dickey," he thought was Richmond's handwriting. Richmond occupied the same office with him but had no connection with the building and loan association.

Joseph Dickey testified that he was a carpenter and miner and built the house for his mother and got no pay for it. His mother told him she was going to have the deed made to him when she was through with it, but he never knew whether she did or not. He knew nothing about it and never told anyone how to make the deed. He had no recollection of ever having it in his possession but must have had if it was mailed back to him, but he did not remember ever taking it out of the post-office. His relations with his mother in 1921 were friendly. Later he went to Florida. When he went to Florida he was single and when he came back he was married. His mother's house was empty when he came back. His mother wanted him to go to housekeeping there, and he did so, and then family trouble started and his mother went over to his sister's. It went on for probably a month and his mother asked for possession of the house. He just moved out and gave it to her. On cross-examination he said he never had any conversation with his mother at any time—never had any control over the property. He did not consider that he was the owner; never did until she got through

with it; never knew whether the deed was made to him or to his mother. The only thing he knew was what she told him. His mother has paid the building and loan association every month since the deed was executed. It was paid by her with her pension of $40 a month. Whatever had been paid she paid it. He said he would not say whether he got the deed from the bank or not. The deed said on its back that it was mailed back to him, but he never had any remembrance of having received it.

The original deed has been certified to us. It is type-written on an ordinary statutory-form blank for warranty deed, and after the words "convey and warrant to Mrs. Eliza Dickey, widow, the following described real estate," some words have been erased and over the erasure are written, apparently by the same machine, with black ink not apparently distinguishable from that of the rest of the instrument, the words, "said real estate to revert at her," followed by the words "death to her son, Joseph Dickey." The words from "said" to "her," inclusive, are written over the erasure. The erasure is not perfect and the words beneath may still be read. They are, "to revert to Joseph Dickey, her son," so that the grant as the deed was first written was to "Mrs. Eliza Dickey, widow, the following described real estate, to revert to Joseph Dickey, her son," while the deed as it now appears with the alteration is to "Mrs. Eliza Dickey, widow, the following described real estate, said real estate to revert at her death to her son, Joseph Dickey." It is apparent from the face of the document that there was no fraudulent alteration, and the character of the alteration indicates that it was made before the execution of the instrument and makes no substantial change in the meaning, and it is apparent that the writer of the deed was not satisfied with the language which it originally contained and made the change, as he thought, to express the meaning more clearly.

When an alteration is suspicious in appearance and not satisfactorily explained the conclusion of fact follows against the instrument, but the appearance of the instrument may furnish a satisfactory explanation without extrinsic evidence. (*Anderson* v. *Augustana College*, 300 Ill. 72; *Hutchison* v. *Kelly*, 276 id. 438.) The appearance of the deed here satisfactorily explains the alteration.

Where a writing is sought to be reformed the evidence of a mistake must be proved by a preponderance of the evidence with a reasonable degree of certainty. Fraud is never presumed, but the burden is upon the person charging it to show it by a preponderance of the evidence, and there is no such preponderance in this case. In fact, the preponderance is the other way. Mrs. Dickey and her son, with his son, were living together in a harmonious way. She bought the lot with the proceeds of the place which she and her husband had in his lifetime and used the remainder of such proceeds in building a house on the lot purchased. She bought the material for the house with the remainder of the proceeds, increased by the amount of the mortgage to the building and loan association. This suit was brought eight years after the making of the deed. Neither the seller of the property nor the scrivener who wrote the deed recalls the circumstances attending its execution, but the seller testified that he made the deed according to the purchaser's directions, and the scrivener, while not recalling the circumstances, testified that he thought he made the deed but he could not swear to it; that he made several deeds for Leiper and this looked as if it was made on his typewriter; that he never knew any other person's instructions except Leiper's in making the deed. Joseph Dickey testified that he did not receive any pay for his work in building the house, and the complainant testified to the same thing. He said he never told anyone how to make the deed; that his mother told him she was going to have the deed made to

him when she was through with it and he never knew whether she did or not, and that he knew nothing about it. The chancellor heard these witnesses and his decision can not be reversed unless manifestly against the weight of the evidence. It manifestly is not against the weight of the evidence, and the decree is affirmed.

*Decree affirmed.*